OPINION
This timely appeal arises from a Mahoning County Court of Common Pleas judgment adopting a magistrate's decision granting Appellant judgment against Appellee in the amount of $30,548.00 plus interest from April 2, 1991. Appellant argues that the court below erred in failing to also award damages for alleged business losses and punitive damages. For the following reasons, we affirm the decision of the trial court.
In the spring of 1989, Appellant, Dino DiGiacomo, DBA Video Rama, purchased a video rental business from Robert Truslow. The parties agreed that Appellant would purchase Truslow's video tape inventory and other personal property for thirty-five thousand dollars ($35,000.00). Appellant paid ten-thousand dollars ($10,000.00) toward the agreed purchase price to Truslow. The parties later amended the sales agreement making the partial payment the final purchase price and thus allowing Truslow to file for bankruptcy. Appellant moved the video inventory and personal property to 1740 Mahoning Avenue, Youngstown, Ohio. In mid-June of 1989 he opened a video rental business known as Video Rama.
In May of 1989, Appellant contracted with an insurance agent for a standard business insurance policy which was issued by Appellee, Westfield Insurance Companies. The policy took effect on or about June 2, 1989 and provided coverage for loss of business personal property up to seventy-five thousand dollars ($75,000.00) and business interruption for up to twelve months. In early June, 1989, Appellee's inspector visited Appellant's premises in accordance with Appellee's standard procedure. At trial the inspector stated that the premises contained a central alarm system which was necessary for Appellee to issue its policy and that in her opinion the policy's coverage limit was not excessive. Her opinion was not based on an inventory but on a visual inspection of the property.
Appellant, his fiance (now his wife, Laura DiGiacomo) and his mother operated the store as a family business. On July 1, 1989, Appellant and his fiance apparently traveled to Florida. Appellant hired Richard Keehner, whom he had known for several weeks, to operate the business. Truslow had previously employed Keehner and Keehner knew the video rental business. On July 7, 1989, Keehner arrived at Appellant's business to find it burglarized and the entire inventory as well as other personal property and records stolen. Among items not stolen was a copy of the insurance policy and the daily business receipts.
Appellee recorded its notice of the claim on July 11, 1989. To process and settle the claim, Appellee required that Appellant provide Appellee with proof of the robbery, proof that Appellant was in Florida on July 6-7, proof that Appellant purchased assets from Truslow, proof of payment to Truslow, proof that Appellant had purchased video tapes in addition to those he purchased from Truslow and an inventory and list of the condition and value of the video and game tapes which were stolen.
Appellant had difficulty complying with Appellee's request due to the theft. However, by early November, 1989, Appellant provided Appellee with a copy of a purchase agreement with Truslow, copies of cancelled checks evidencing payment of $10,000.00 to Truslow, a receipt/confirmation for airline tickets to Florida, an inventory of video tapes which Appellant prepared, a price list from a video supplier, a copy of the police report of the robbery and two recorded statements of Appellant's loss and claim. Appellant repeatedly requested that Appellee replace his lost property or in the alternative issue funds so that he could undertake the replacement himself. Appellee found that Appellant's documentation lacked credibility and denied Appellant's requests.
Appellant filed suit against Appellee on July 5, 1991, claiming breach of contract and demanding damages for property loss, business interruption and punitive damages. On August 7, 1996, the court issued a magistrate's decision which awarded Appellant a total of thirty thousand five-hundred forty eight dollars ($30,548.00) plus interest for property loss. The magistrate denied Appellant's claim for damages due to business interruption, stating that while Appellant established a gross monthly income, the one month that the business operated was too uncertain a basis to project the loss for the twelve month period which the policy covered. The magistrate also stated that Appellant's estimates for expenses were incomplete and that Appellant provided no payroll estimate. The magistrate also denied Appellant's claim for punitive damages, stating that Appellee's actions did not amount to the requisite lack of good faith. The magistrate found that Appellee's suspicion as to the validity of the claim was understandable considering that the claim arose only three months subsequent to the issuance of the policy and that Appellant had left his business within a month of opening it. According to the magistrate, the insurer was entitled to investigate the claim under normal circumstances. Under the exceptional circumstances presented by Appellant's claim, the magistrate found that investigating the merits of the claim did not breach the Appellee's duty to deal in good faith. However, the magistrate also stated that Appellee exercised poor judgment in handling the claim.
On August 27, 1996, Appellant moved for an extension of time within which to object to the magistrate's decision. The court granted a fourteen (14) day extension on the same date. On September 10, 1996, Appellant filed objections to the magistrate's decision citing to Civ.R. 53(E)(3)(b). In these, Appellant stated that he was without the aid of a transcript to make specific objections and requested a 60 day leave within which to amend his filing in order to identify specific objections. Appellant stated that the litigation was complicated, that the hearing lasted four and one-half days and that a "costly and lengthy transcript" needed to be prepared for him to identify and delineate specific objections. The court did not grant the additional leave and Appellant did not amend his objections. On November 8, 1996 the court adopted the magistrate's decision.
On December 6, 1996, Appellant filed his notice of appeal. In his brief, Appellant raises two assignments of error. However, as Appellant failed to properly object to the magistrate's decision we must affirm the trial court decision on this basis.
A party may file written objections to a magistrate's decision within fourteen (14) days of the filing of the decision. Civ.R. 53(E)(3)(a). Objections must be specific and stated with particularity. Civ.R. 53(E)(3)(b). Furthermore, "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under [Civ.R. 53]." Civ.R. 53(E)(3)(b). "This rule reinforces the finality of trial court proceedings by providing that failure to object constitutes a waiver on appeal of a matter which could have been raised by objection." Civ.R. 53(E)(3)(b) commentary.
Appellant's objections were not stated specifically or with particularity. Even though Appellant stated that he was without the aid of a transcript to make specific objections, he did have the magistrate's decision from which he could have formulated specific and particular objections. If the objections were to factual determinations, it would then have been his duty to provide the trial court with a transcript for review. Civ.R. 53(E)(3)(b). If a transcript was unavailable, Appellant could have supported his objections to the magistrate's findings of fact by an affidavit of evidence. Civ.R. 53(E)(3)(b). Appellant's request for leave to amend his objections, which he failed to subsequently do, and his specific reference to Civ.R. 53(E)(3)(b) indicate his understanding of the parameters of that rule.
Given the concise language of Civ.R. 53(E)(3)(b), its stated policy to resolve objectionable matters at the earliest possible time, Appellants obvious awareness of its requirements and his failure to comply with them, we affirm the decision of the trial court.
Assuming, arguendo, that Appellant had properly objected to the magistrate's decision and we were to review the matter on the merits, the trial court decision must still be affirmed.
Appellant's first assignment of error alleges:
 "THE MAGISTRATE ERRORED [SIC] IN NOT AWARDING BUSINESS INTERRUPTION PAYMENTS TO APPELLANT UNDER THE TERMS OF THE CONTRACT OF INSURANCE BETWEEN THE APPELLANT AND APPELLEE."
In AGF v. Great Lakes Heat Treating (1990) 51 Ohio St.3d 177, the Ohio Supreme Court stated:
 "* * * we hold that a new business may establish lost profits with reasonable certainty through the use of such evidence as expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and other relevant facts."
Id., 183-184.
In the present case, the magistrate denied damages for lost profits due to business interruption stating that the claim was too speculative. Although he incorrectly reasoned that use of a calculation based on one month of operation is too uncertain a basis to project Appellant's future income, this error is not prejudicial to Appellant. A reviewing court must give great deference to the magistrate's findings of fact and conclusions of law if there is competent and credible evidence to support it.Myers v. Garson, (1993) 66 Ohio St.3d 610, 614, reh'g denied67 Ohio St.3d 1439 (1993). A court of appeals will not reverse a trial court judgment which results in a correct decision merely because the lower court based this decision on erroneous reasoning. Id., 614-615.
In the case before us, Appellant failed to prove his alleged damages for business interruption. Appellant produced no expert witnesses testimony as to lost profits. He relied, instead, on the testimony of Appellee's adjuster to present the formula that would be used to calculate lost profits. In applying this formula, Appellant produced only his daily business receipts which he claimed showed an average of ninety-nine dollars ($99.00) in daily income for his business. Appellant admitted, however, that his computation was a mere estimate. In addition, as Appellee notes, these receipts contained duplications and other irregularities which amounted to a reduction 7-10% of Appellant's estimated daily business. Appellant provided his own self-serving testimony as to what amounts would be deducted from gross revenue to arrive at lost profits. He offered no monthly utility bills or other proof of overhead nor did he offer proof of any amount which he had paid to or would pay to his employee(s).
Consistent with AGF, supra, the record reflects that the trial court had an insufficient basis on which to project Appellant's business loss. Although Appellant's business records should be considered pursuant to AGF, supra, Appellant himself testified to discrepancies therein. Accordingly, there was competent and credible evidence on which the magistrate could have based his finding that Appellant's claim was too speculative and we affirm the magistrate's decision not to grant damages for business interruption.
Appellant's second assignment of error alleges:
 "THE MAGISTRATE ERRORED [SIC] IN NOT AWARDING PUNITIVE DAMAGES TO APPELLANT FOR APPELLEE'S BAD FAITH AND MALICIOUS FAILURE TO ADJUST AND SETTLE THE VALID CLAIM OF THE APPELLANT PURSUANT TO THE CONTRACT OF INSURANCE OF THE PARTIES."
Here, Appellant argues that he was entitled to punitive damages as Appellee acted in bad faith and with actual malice in denying his claim. This argument is unpersuasive.
In Zoppo v. Homestead Insurance Co. (1994) 71 Ohio St.3d 552,554, the Supreme Court restated the standard that:
 "[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefore."
 Thus, in Staff Builders, Inc. v. Armstrong (1988), 37 Ohio St.3d 298, the Court stated:
 "Punitive damages may be recovered against an insurer that breaches its duty of good faith in refusing to pay a claim of its insured upon proof of actual malice, fraud or insult of the insurer."
Id., paragraph two of the syllabus.
Actual malice is found were there is, "* * * a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston v. Murty
(1987) 32 Ohio St.3d 334, 336.
With respect to Appellant's claim that Appellee acted in bad faith, there is evidence to support Appellee's contention that it was justified in its suspicion of Appellant's claim. The policy was issued only three months prior to the claim and Appellant left his new business in the hands of a relative stranger. In addition, Appellant and his fiance had difficulty recounting their whereabouts in Florida at the time of the break-in. Other than conflicting testimony, Appellant offered proof of his presence in Florida only by a receipt for airline tickets; he had no proof that he actually used the tickets nor did he produce receipts for hotels, etc. which would be indicative of his trip. Appellee also pointed to evidence of exaggerated loss and misrepresentations concerning the central alarm system required for insurance coverage; both potential grounds for a voidance of the policy. Consistent with Myers, supra, the magistrate's decision cannot be disturbed as there is competent and credible evidence to support his findings and conclusions.
Because of Appellee's reasonable justification for its actions, Appellant's argument purporting actual malice on the part of Appellee in consciously disregarding Appellant's contract rights is without merit. In Zoppo, supra, the court stated that an insurer has an affirmative duty to adequately investigate a claim. Id., 558. The court found that the insurer's breach of this duty by not questioning known suspects or following leads in a fire loss amounted to a conscious disregard for the insured's rights under the contract. Id. In the present case, Appellant argues that Appellee did not adequately investigate the claim but rather, investigated how not to pay the claim. However, as Appellee argues, the circumstances justified its actions in this matter.
For the foregoing reasons, Appellant's assignments of error lack merit and we affirm the decision of the trial court.
Donofrio, J., concurs.
Vukovich, J., concurs.
APPROVED:
 ______________________________ CHERYL L. WAITE, JUDGE